UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Robert A. Brown,

Case No. 08-31279
Chapter 13

Debtor.

Appearances:

Russell S. Simonetta, Esq.
Simonetta & Associates, P.C.
Attorney for Debtor
State Tower Building
109 South Warren Street, Suite 512
Syracuse, New York 13202

Lynn Harper Wilson, Esq.
Staff Attorney to Chapter 13 Trustee, Mark W. Swimelar, Esq.
250 South Clinton Street, Suite 203
Syracuse, New York 13202

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

MEMORANDUM-DECISION AND ORDER

Before the court is the Chapter 13 trustee's ("Trustee") objection to confirmation of the plan proposed by Robert A. Brown ("Debtor"). The issue centers on the appropriate way to determine plan payments when a debtor has unpredictable income that causes a disparity between "monthly disposable income" as calculated on Form 22C and "monthly net income" as calculated on Schedule J. This court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1) and (b)(2)(L).

1

## **BACKGROUND**

The parties agree that there are no disputed facts and the issue may be decided as a matter of law. The parties filed a joint stipulation of facts, which the court adopts in making the following specific findings:

1. Debtor filed a Chapter 13 petition on May 21, 2008;
2. Debtor is employed as a Sewer Maintenance Worker for the City of Syracuse;
3. Debtor receives substantial overtime during winter months from snowplowing on behalf of the City;
4. Debtor's filed Income Tax Returns demonstrate gross income of $38,561.00 in 2004, $44,019.00 in 2005, $17,372.00 in 2006 and $42,099.00 in 2007;
5. On Line 2 of Form 22C, Debtor lists gross wages, salary, tips, bonuses, overtime and commissions of $4,961.53 per month;
6. Line 15 of Form 22C shows annualized current monthly income of $59,538.36, which is greater than the applicable median family income;[1]
7. The applicable commitment period is five years;
8. Line 59 of Form 22C shows $1,182.15 in "monthly disposable income" but the amount should be $902.56 based upon "Other Expenses" on Line 60;
9. On Schedule I, Debtor lists $3,692.89 as monthly gross wages and $1,049.01 in estimated monthly overtime for a total monthly income of $4,741.90;
10. The estimated monthly overtime in Schedule I is based on year-to-date figures as of the date of filing;
11. Debtor's "monthly net income" according to Schedules I and J is $403.35;
12. Debtor's plan proposes monthly plan payments of $400.00;
13. Debtor was current with his plan payments through the date of submission of this matter to the court.

---

[1] Debtor maintains a household of one. As of the petition date, the applicable median family income for a household of one living in New York State was $44,587.00. See United States Trustee's website at www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm providing applicable median family income information by locale and family size.

## **DISCUSSION**

Under Code section 1325(b)(1), a plan cannot be confirmed over the objection of the trustee or an unsecured claimant unless all claims are to be paid in full or the debtor provides all of his "projected disposable income" to be received during the applicable commitment period for payment to unsecured creditors through the plan.[2] 11 U.S.C. § 1325(b)(1). Since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, there has been significant litigation over how to calculate a debtor's projected disposable income for purposes of plan confirmation under Code section 1325. *See In re Osei*, 389 B.R. 339, 344 (Bankr. S.D.N.Y. 2008).

Code section 1325(b)(2) instructs debtors on how to calculate their disposable income. It provides:

> For the purposes of this subsection, the term "disposable income" means *current monthly income received by the debtor* (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) *less amounts reasonably necessary to be expended—*

11 U.S.C. § 1325(b)(2) (emphases added). Current monthly income is an historical average defined in Code section 101(10A) as follows:

> The term 'current monthly income'—
>
> > (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on—
> >
> > > (i) the last day of the calendar month immediately preceding the date of the commencement of the case . . ..

11 U.S.C. § 101(10A). Because Debtor filed in May, his "current monthly income," calculated by averaging his total income received in the six months prior to filing, was based almost

---

[2] The term "Code" refers to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2008).

3

entirely on winter months, which included overtime work not available for the balance of the year. This explains why Debtor's annualized current monthly income calculated in accordance with Form 22C does not realistically correspond to his actual income for the past four years.

Code section 1325(b)(3) instructs above-the-median debtors on how to determine "amounts reasonably necessary to be expended." It provides in pertinent part:

> Amounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
>
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner . . ..

11 U.S.C. § 1325(b)(3). Under Code section 1325, above-the-median chapter 13 debtors calculate their disposable income by taking their "current monthly income" (based on the 6-month historical average) and then subtracting amounts "reasonably necessary to be expended," a formulaic calculation found in Code sections 707(b)(2)(A) and (B).

If the trustee or an unsecured claimant objects, the focus becomes projected disposable income. *See* 11 U.S.C. § 1325(b)(1). Code section 1325(b)(2) defines "disposable income," but it does not define "*projected* disposable income." This court has followed a majority of courts in holding that monthly disposable income on Form 22C is a "first look" at a debtor's projected disposable income for the purposes of satisfying Code section 1325(b)(1). *See generally In re Kibbe*, 361 B.R. 302 (1st Cir. B.A.P. 2007); *In re Lanning*, 380 B.R. 17 (10th Cir. B.A.P. 2007); *In re Petro*, 395 B.R. 369 (6th Cir. B.A.P. 2008); *but see In re Kagenveama*, 541 F.3d 868 (9th Cir. 2008). This first look can be followed by inquiry into monthly net income on Schedule J when a disparity between it and monthly disposable income on Form 22C exists. *See In re Petro*, 395 B.R. at 377–78.

4

As Trustee has noted, this court has permitted deviation from monthly disposable income on Form 22C when monthly net income on Schedule J is *higher*. Here, however, Debtor's monthly net income on Schedule J is *lower* than monthly disposable income on Form 22C. Trustee asserts that the only permissible deviation from monthly disposable income on Form 22C in this situation is upon a showing of "special circumstances." Special circumstances are described in Code section 707(b)(2) as follows:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent that such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i). The invocation of special circumstances that permit a debtor to justify additional expenses or adjust current monthly income simply does not apply here, because Debtor is not trying to do either. Accordingly, as further explained below, the court finds Trustee's arguments regarding special circumstances inapplicable.

Code section 1325(b)(3) states that "amounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." Judge Lundin notes in his chapter 13 treatise that these subparagraphs cannot be perfectly incorporated:

> The mathematical test for determining whether a presumption of abuse arises in § 707(b)(2)(A) and (B) was not designed with disposable income in a Chapter 13 case in mind. The fit is worse than imperfect—it is illogical at the level of theory; impossible of precise execution; and every drafting miscue is magnified by the ill-conceived application.

Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d. Ed. 471-2 (2000 & Supp. 2007-1). As discussed above, Code section 707(b) is the method by which a court determines whether granting relief under chapter 7 would be an abuse of the provisions of chapter 7. 11 U.S.C. § 707(b)(1). The so-called "Means Test" found in Code section 707(b)(2) is a mathematical calculation. This

5

section directs that a court presume abuse if a debtor's current monthly income reduced by the expenses included in Code section 707(b)(2)(A) and "multiplied by 60 is not less than the lesser of— (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or (II) $10,950." 11 U.S.C. § 707(b)(2)(A)(i).

Demonstrating special circumstances is the means by which a debtor rebuts a presumption of abuse and can therefore alter the amounts listed as expenses and/or income on Form 22A or 22C.[3]  11 U.S.C. § 707(b)(2)(B). Because the test in Code section 707(b)(2)(A)(i) is basically a mathematical calculation, changing the amounts on Form 22A or 22C can bring a result that satisfies the test. If a debtor is unable to establish special circumstances and does not meet the standard outlined in Code section 707(b)(A)(i), the case is dismissed, or, upon consent of the debtor, converted to chapter 13.

However, the landscape of chapter 13 is significantly different from that of chapter 7. The instant motion is not a proceeding brought under Code section 707(b) for abuse, but rather a determination of projected disposable income for purposes of plan confirmation under chapter 13. There is no provision for determining "abuse" in chapter 13. A debtor's main hurdle in chapter 13 is not the Means Test abuse standard in chapter 7, but rather proposing a confirmable plan. If a debtor cannot propose a confirmable plan, the case will be dismissed or converted to one under chapter 7.

As stated above, monthly disposable income calculated on Form 22C is a first look at a debtor's projected disposable income. Ideally and most often, Form 22C and Schedules I and J will provide a similar view of a debtor's financial situation. *See In re Petro,* 395 B.R. at 377. While Form 22C is a first look, Schedules I and J can inform that look. When, as here, the

---

[3] Form 22A is used for cases filed under chapter 7 and Form 22C is used for cases filed under chapter 13.

6

calculations on Form 22C result in an annualized monthly income that exceeds what Debtor has earned in the three years prior to filing and his employment has not changed, further inquiry is necessary.[4] As part of that inquiry, Debtor has explained that his income fluctuates depending on how much overtime he works during the winter months plowing snow for the City of Syracuse. Whether or not the overtime is available is more within the province of Mother Nature than within the control of the Debtor.[5]

Debtor asserts that his plan payments are based on his actual income and average year-to-date expenses. Schedule I indicates the portion of Debtor's income attributable to overtime and also includes an explanatory statement indicating that overtime is reduced significantly during the summer months. The court finds that this is an adequate explanation of the discrepancy between Debtor's monthly disposable income and monthly net income for the purpose of determining an appropriate plan payment.[6]

Accordingly, Trustee's objection is overruled and Debtor's plan may be confirmed.

Dated: March 30, 2009
Syracuse, New York

Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge

---

[4] To hold otherwise would remove any flexibility in the process of assessing a proposed plan and would encourage a gerrymandering of the bankruptcy process, especially for debtors with variable and/or seasonal income.

[5] While the court notes that the average snowfall Syracuse is likely to receive is 111 inches per winter, whether the snow comes all at once or is evenly distributed will affect the amount of available overtime.

[6] Confirmation of the plan does not limit the Trustee's right to seek modification under Code section 1329 should Debtor's disposable income increase during the term of the plan.